EASTERN DIS.
*March*, 1833.

RIBAS ET AL.
*vs.*
BENNETT.

5L 271
46 339

RIBAS ET AL *vs* BENNETT.

APPEAL FROM THE COURT OF THE FIRST DISTRICT.

The plea of prescription will not be sustained, if the party pleading it do not show that his civil possession has been exclusive.

Of two claims to a tract of land under concessions when Louisiana formed a Spanish province, *that* will prevail, which has been regularly entered before the commissioners, and confirmed by the act of congress of 1820.

The plaintiffs in this action, Mariano Ribas and Roman Colmenero, allege that Jacques Rigand in 1781, obtained from the Spanish government a concession of forty arpents in the Grand island or Barataria, which were located from the eastern extremity of the island. They allege that Cailler, in 1783, obtained a similar concession of forty arpents on the island, which were located at a distance of more than thirty arpents from Rigand's land; and that Anfray, alias Normand, in 1785, obtained a concession of all the vacant land between the tracts conceded to Rigand and Cailler, and in 1787, Dupene obtained a concession for the remainder of the land behind Cailler's concession.

In 1801, as is alleged in the petition, Cailler's vendee, in a dispute about boundaries, admitted Anfray's title to thirty arpents, measuring from Rigand's boundary, and accordingly in the presence of parties, lines were drawn and ditches dug to serve as boundaries. In 1809, Anfray caused his land to be surveyed conformably to these bounds, and his title thereto was confirmed by the United States. The plaintiffs aver that Dupene's widow in 1809, by an *ex parte* survey caused stakes to be placed on ten arpents of Anfray's land.

The plaintiffs are the present owners of the land conceded to Anfray, and twenty-three arpents of that conceded to Rigand; and pray that the metes and bounds placed on their land may be removed, and that possession may be restored with damages, &c.

The defendant, who is the owner of the land conceded to Cailler, denied the principal allegations of the petition, tending to charge him with damages, averred the validity of his title, and impleaded in the suit as a party in interest the present owner of the tract of land conceded to Dufresne. He appeared, denied the principal allegations of the plaintiffs, and alleged that his title was valid to the land of Dupene's concession.

On these pleadings the parties went to trial, and judgment was rendered for the plaintiffs, from which, after an unsuccessful attempt to obtain a new trial, the defendant, Bennett, appealed.

*L. C. Duncan,* for appellants.

1. The order of survey, grant and titles, under which defendant holds, taken in connection with the evidence, support his claims, and show that the judgment of the District Court is erroneous.

*Morphy,* for appellees.

1. The order of survey under which plaintiffs claim, having been recorded and confirmed, must prevail over defendant's title, which is incomplete and not recorded. *Ingersoll's Digest,* p. 508, 529.

2. The agreement of 1801, is binding on the assigns of Encalada, *C. C. arts.* 2239, 3522, *sec.* 5. *Toullier, v.* 8, *art.* 245, *p.* 373.

MATHEWS, J. delivered the opinion of the court.

This is an action of *bornage.* The plaintiffs in their petition, set forth the different grants or concessions of the neighboring proprietors in the island of Barataria, or Grand Isle, where the property in dispute is situated.

These concessions were made by authority of the Spanish government, and appear not to have prevailed farther than

orders of survey under that government, which were not exe-

cuted until since Louisiana was acquired by the United States. The disputed limit in the present instance is that which divides, or is the common boundary between the grant made to one Anfray, alias Norman, and that made to a person named Cailler. The plaintiffs claim title as derived from the former, and the defendant derives his title from the latter through or under one Manuel Encalada. He alleges possession in himself and others, under whom he claims, according to limits established by a deputy surveyor of the United States in November, 1809, and pleads prescription. The land between the disputed limits is of a triangular form and the right to possess it as claimed by the plaintiffs, depends on the quantity of front which Anfray was entitled to have (according to his concession) on the gulf of Mexico. The court below rendered judgment in favor of the plaintiffs, from which the defendant appealed.

The pleadings and evidence of the case show that four orders of survey were obtained from the Spanish authorities, for land in the Grand Island or Barataria, to an amount sufficient to cover nearly the whole island. One in favor of Jacques Rigand in 1781, or 1782, of forty arpents front at the eastern end of the island; another for forty arpents in favor of one Cailler in 1783, to be located at some distance from the tract of Rigand; Cailler's tract being that now owned by the defendant. A third order of survey was granted in 1785, to Français Anfray, alias Norman, for all the vacant land which might be found between the tracts granted to Rigand, and to Cailler; and a fourth order issued in 1787, to one Dufrene, for forty arpents at or towards the western end of the island. These different portions of land were settled on and occupied by the persons who had obtained permissions to settle and orders of survey, or persons claiming under them previous to the time when Louisiana was ceded to the United States. But previous to that time no actual surveys had been made or limits fixed between the occupants. After the change of government and sovereignty of the province of Louisiana, (from any thing appearing in evidence

EASTERN DIS.
March, 1833.

RIBAS ET AL
vs.
BENNETT.

in the present case.)   Anfray was the only claimant who filed his claim before the land commissioners of the United States, and in pursuance of it caused a survey to be made in May, 1809, by William Henry, a deputy surveyor.   This survey gives the limit contended for by the plaintiffs, and thirty arpents in front on the gulf.

In November of the same year, Truard, a deputy surveyor of the United States, under Lafon, surveyed all the tracts of land for the different claimants on the island beginning at the western end, and fixed the limit below Cailler's concession and that of Anfray, as contended for by the defendant.   Anfray refused to attend at the operations of his last surveyor, or to exhibit his title, relying, it may be presumed, on the survey previously made by Henry in conformity with his claim.   Now had there been no survey except the general one made by Truard, and all the claimants and persons holding under them, had possessed and acquiesced in it until the commencement of the present action, it is probable that the plea of prescription would have been available to the defendant.,   But in consequence of the survey made by Henry, and the occupancy of Anfray, and those holding under him in pursuance of that survey, the question presented for decision is one merely of *bornage*, and not affected by prescription; for the defendant, and those who possessed before him, cannot be bound as having had exclusive civil possession of the premises in dispute.   *See* 6 *N. S. p.* 703, the case of *Bourguignon* vs. *Boudousquie.*

The evidence of the cause shows, that as far back as 1801, a dispute about limits arose between Anfray and Manuel Encalada, who then held the land conceded to Cailler, which was amicably adjusted by allowing the former thirty arpents front on the gulf of Mexico.   The survey by Henry seems to have been made in accordance with that settlement of limits; and when we take into view that Anfray appears to be the only claimant of lands on the Grand Isle or Barataria, who regularly entered his claim before the commissioners, which was surveyed in 1809, giving limits, such as are now conten-

*The plea of prescription will not be sustained, if the party pleading it do not show that his civil possession has been exclusive.*

*Of two claims to a tract of land under concessions when Louisiana formed a Spanish province, that will prevail, which has been regularly entered before the commissioners, and confirmed by the act of congress of 1820.*

ded for by the plaintiffs, and that this claim was confirmed by an act of congress, passed in 1820, we are unable to perceive any error in the judgment of the court below.

It is, therefore, ordered, adjudged and decreed, that the judgment of the District Court be affirmed, with costs.