ELLIS, Judge.
This suit is before us on appeal from a judgment of the trial court maintaining an exception of no right of action. The plaintiffs are the heirs of Edward Wisner and Mary Jane Wisner, his wife, and are hereinafter referred to as the Wisners. The defendant is Louisiana Land and Exploration Company, hereinafter referred to as LL & E.[1]
Both litigants claim to be the owners of Lot #3, Section 4, Township 24 South, Range 20 East, Parish of Terrebonne, Tim-balier Island, and both trace their claims to the acquisition of Edward Wisner from the *778 Atchafalaya Basin Levee District in 1901. In that _ conveyance, Edward Wisner acquired':
■“Tract of Estate of Henry White: Tráct on Timbalier Island being lots 3, S, and 6 of Section 4 Township 24 South, Range 20 East, containing 98 acres.” [2]
In 1902 Edward Wisner sold lots five and six of the tract of the estate of Henry White to South Louisiana Land Company, Ltd. Unquestionably lots five and six were later acquired by mesne conveyance by LL & E. It is unnecessary to consider the contention of LL & E that the omission of lot three -fr-om. the 1902 deed was an oversight, as LL & E- has a stronger claim to Lot Three. -As there are no other recorded documents whereby it is alleged that Edward Wisner conveyed Lot 3, we will assume ■ that he had a good and valid title thereto at his death.
LL & E contends that Mary Jane Wisner acquired title to Lot Three by virtue of an omnibus description or “Mother Hubbard” clause contained in the succession sale of the State of Edward Wisner held in February 1918, at which she was the purchaser. The pertinent part of that clause is as follows :
“All right, title, interest, claim or demand of any name', nature, kind or character which the late Edward Wis-ner might have in and to any land or real estate situated in the State of Louisiana, and' particularly in the Parishes (of * * * Terrebonne * * *, and ■which has not heretofore been alienated ■'* * (The sale was without warranty.)
In March, 1918 Mary Jane Wisner transferred by essentially the same omnibus description to Wisner Estates, Inc. whatever she acquired under it at the succession sale. From Wisner Estates, Inc. LL & E is able to show a chain of title to Lot Three by particular description ending in 1926 in itself.[3]
It is necessary, therefore, to determine what effect, if any, the omnibus description contained in the Succession sale and sale to Wisner Estates, Inc. had as to Lot Three. We believe that it was sufficient to transfer Lot Three in both instances, and that, accordingly, the Wisners have no right to assert title to Lot Three.
The Wisners have cited and quoted from many cases on pages 32 through 45 of their well organized brief, but we find these cases inapplicable. Lattimer’s Heirs v. Gulf Refinery Co. of La., et al., 146 La. 249, 83 So. 543; Messick et al. v. Mayer, 52 La.Ann. 1161, 27 So. 815; Fair v. William et al., 187 La. 953, 175 So. 631; Smith v. Krause & Managam Lumber Co., 125 La. 703, 51 So. 693; and Perkins v. Louisiana Land & Exploration Co., 171 La. 913, 132 So. 499, do not support the-Wisners’ position that the omnibus clause was inoperative ab initio. None of these cases deal with an omnibus clause, but with various judicial sales wherein the property was allegedly omitted from the description of property sold or was incorrectly described and thereby included property to which the vendor had no claim.
Daigle v. Calcasieu National Bank of Lake Charles, 200 La. 1006, 9 So.2d 394 and Baldwin et al. v. Arkansas-Louisiana Pipe Line Co., 185 La. 1051, 171 So. 442, did deal with omnibus clauses and held that, quoting from the Baldwin opinion 171 So. at page 446;
“A deed which fails to describe by legal subdivisions the real estate intended to be sold and makes no reference to any deed, map, plat, latent, survey, or *779 boundary by which the description may be ascertained is void as. to third parties for want of description of the thing sold. It is not translative of any specific property and could not form the basis of prescription.”
However, in the case at bar, possible injury to third parties is not involved, as the Wisners are the descendants' of both Edward Wisner (in whose succession the omnibus clause first appeared) and Mary Jane Wisner (who purchased and sold by omnibus description). The third party in this case is LL & E, seeking to sustain the validity of the omnibus clause as against the parties and their privies to the sales by omnibus description.
In Williams v. Bowie Lumber Co., Limited, 214 La. 750, 38 So.2d 729, which was recently followed in the case of Tucker v. New Orleans Launderies, Inc., 4 Cir., 145 So.2d 365, we find the following pertinent language 38 So.2d at page 730, 731:
“The main contention of the defendant is that the deed from Martin to Down-man transferred the land in controversy, even though it was not particularly described therein, in view of Martin’s expressed intention to convey ‘all of the property owned by him in the Parish of LaFourche’ except certain described land in Section 15 and all land in Section 8.
“We think that the point is well taken for the reason that, as between the parties to the contract and their privies, a sale of real property by an omnibus designation is just as effective and binding as though the lands were specifically described.”
iji % jji ‡ íjí i|s
“Defendant is neither attempting to reform the deed, nor is it seeking a specific performance of the contract. Its position is that Martin sold to Down-man all of his lands in Lafourche Parish (except certain land specifically designated); that the effect of this deed was to transfer title to the property in controversy and that plaintiffs, as heirs of Martin standing in his shoes, are without right or interest to assert that the sale is invalid because the lands are not described in detail.”
Also see Kohler v. McClellan, 156 F.2d 908; Saucier v. Crichton, 5 Cir., 147 F.2d 430.
Following this language, Justice McCaleb as the organ of the court, distinguished both the Baldwin and Daigle cases, as well as other cases, with the following language:
“All of those cases involved the rights of third persons and they are authority only for the proposition that a sale with an omnibus description does not supply notice to third persons who acquire an adverse interest in the lands.”
Certainly, therefore, as between the Wis- ' ners and Wisner Estates, Inc., the omnibus clause was translative of title to Lot Three. It is likewise certain that third parties deriving title from the Estate of . Edward Wisner by particular description of Lot Three, (at least prior to the aliena- - tion of Lot Three by Wisner Estates, Inc. by particular description in 1923), would, have a superior title to that herein advanced ■ by LL & E. Daigle v. Calcasieu National Bank of Lake Charles, supra and Baldwin. - et al. v. Arkansas-Louisiana Pipe Line-Company, supra. However, no such third' parties are before this court and no recorded instrument evidencing any such possible, claim has been brought to our attention.
Should any doubt still exist as to the superiority of the claim to ownership of LL & E over the Wisners’, our attention has been directed to a certain compromise agreement entered into in 1945 between the parties hereto. In this compromise the Wisners specifically ratified the act of sale whereby LL & E acquired title to Lot Three by particular description in 1926.
The trial court dismissed the Wisners, contention that the compromise and ratifi--cation was limited by the following lan *780 guage - found in Article VI of the compromise :
“The Wisners and each of them do hereby approve, ratify and confirm, in 30 '&''&3 the matters and things hereinafter referred to in this Article VI may bear upon,'relate to or affect, all or any part of the lands described in the sales, transfers, assignments and conveyances referred to in the above and foregoing Article V, and any other lands which Wisner of Louisiana and the Wisner Subsidiaries, or any one or more of them, may have acquired between April 17, 1917 and March -1, 1926, the following:”
Having found that Lot Three actually passed to Wisner Estates, Inc., one of the subsidiaries contemplated by the above language, in the year 1918, the compromise was certainly a ratification of the acquisition by LL & E of Lot Three and fell clearly within the limiting language of the compromise. The trial judge in his reasons for judgment stated that he was impressed by the compromise -agreement that the Wisners had a thorough knowledge of what they were doing.
The judgment of the trial court maintaining the exception of no right of action, for the foregoing reasons, is affirmed at appellants costs.
Affirmed.

. There are numerous other parties litigant but it is unnecessary to detail them for a disposition of the issues raised by the exception of no right of action. As other litigants are claiming ownership under chains of title not based on the title acquired by Edward Wisner, this court will assume a valid title to have been acquired by the said Edward Wisner.

. Lots 3, 5 and 6' actually contain 98.73 acres as follows : Lot 3 contains 28 acres, Lot 5 contains 40 acres, and Lot 6 contains 30.73 acres.

. The sheriff’s sale in the Succession of Edward Wisner and the 'sale by Mary Cane Wisner to Wisner Estates, Inc., contained particular descriptions of many other parcels of land.