246 So.2d 340 (1971)
J. H. JENKINS CONTRACTORS, INC.
v.
Joseph J. FARRIEL and Mary Victoria Farriel.
No. 8238.
Court of Appeal of Louisiana, First Circuit.
March 15, 1971.
Rehearing Denied April 19, 1971.
Writ Granted June 2, 1971.
*341 Patsy Jo McDowell, Baton Rouge, for appellant.
Roger M. Fritchie, of Durrett, Hardin, Hunter, Dameron & Fritchie, Baton Rouge, for appellees.
Before LANDRY, SARTAIN and ELLIS, JJ.
LANDRY, Judge.
In this petitory action, plaintiff claims title to the western 15 acres of a 20 acre rectangular tract of land situated in the SW ¼ of the NE ¼, Section 6, T 9 S, R 6 E, Livingston Parish, and appeals the judgment of the trial court recognizing plaintiff's title to only the center or middle ten acres of the tract, and also decreeing defendants, Joseph J. Farriel and Mary Victoria Farriel, to be owners of the eastern 5 acres by record title, and defendant, Joseph J. Farriel, owner of the western 5 acres by thirty years adverse possession. Defendants have answered the appeal claiming ownership of the entire 20 acre parcel and alternatively contending that plaintiff's claim as to the center 10 acres should be rejected because of plaintiff's alleged failure to establish title thereto. We affirm the judgment below insofar as it decreed defendants owners of the eastern and western 5 acres of the tract in dispute and reverse the judgment decreeing plaintiff to be the owner of the center 10 acres.
*342 The acreage in contention was formerly owned by Simpson H. Sharp, Sr. and his spouse, Nannie Kate Carter Sharp. From these common ancestors, both plaintiff and defendant derive such recorded title as each possesses. Plaintiff's claim of ownership stems from five recorded deeds from various parties purporting to be heirs of Simpson H. Sr. and Nannie Kate Carter Sharp. Each said conveyance recites that the named vendors transfer to plaintiff:
"All of (names of vendors) right, title and interest in and to all immovable property formerly owned by Simpson H. Sharp, Sr. and Mrs. Nannie Kate Carter Sharp in Livingston Parish, Louisiana.
The immovable property herein sought to be conveyed includes but is not limited to all of Seller's interest in and to that property sought to be partitioned in Suits Numbers 17,850, 18,121, 18,122, 18,123, 18,124, 18,125, 18,126, 18,127, and 18,128 on the docket of the Twenty-First Judicial District Court in and for Livingston Parish, Louisiana, which suits are all entitled `J. H. Jenkins Contractors, Inc., v. Wiley H. Sharp, Jr., et al'; and also includes but is not limited to Suit Number 16,490 on the docket of the Twenty-First Judicial District Court in and for the Parish of Livingston, Louisiana, entitled `W. H. Sharp, Jr., and Others v. William Alexis and Others.'"
In 1944, by an unacknowledged, unauthenticated act under private signature, defendants herein purchased from Simpson H. Sharp, Sr. five acres of land described as follows:
"Five (5) acres of land in Section 6 T 9 S R 5 E. Bounded North by Farriel road; South by James Sharp land; East by Bill Brown; West by Simpson H. Sharp, together with all buildings and improvements thereon, less one-half mineral rights reserved by vendor."
Thereafter, on May 19, 1948, defendants' deed was amended to change the range number from 5 to 6, said revision being executed by Nannie K. Sharp, acting as agent of Simpson H. Sharp, by virtue of a recorded power of attorney. It is conceded that the description in defendants' deed covers the eastern five acres of the 20 acres in contention.
Plaintiff's petition alleges defendants' ownership of the eastern five acre portion of subject property, which allegation is admitted in defendants' answer. Notwithstanding this procedural aspect of the case, appellant's brief is devoted in large measure to an attack on defendants' unacknowledged deed to the eastern five acre plot. Also significant is the fact that in appellant's brief and oral argument before this court, it is expressly conceded that defendants have acquired title to the western five acre plot by thirty years adverse possession. In this connection, we note that the record conclusively establishes that defendant, Joseph J. Farriel, and his parents before him, have had continuous, open, peaceable, public and uninterrupted possession as owners of the western five acres of subject tract at least from 1935, when defendant's father built a home thereon, until October, 1969, when this action was instituted, a period in excess of thirty years. Defendant maintains that his father purchased the western five acres from Sharp; that defendant saw the deed which was never recorded, and that the deed was lost in a fire which destroyed the family home in 1955. It is undisputed that the residence was immediately rebuilt on the same site, that is on the western five acres of the property in contention.
Considering plaintiff's admission of defendants' ownership of the eastern and western five acres involved, together with defendants' deed to the eastern 5 acres and established prescriptive title to the western 5 acres, we deem defendant, Joseph J. Farriel, owner of the western five acres of the property involved and defendants, Joseph J. Farriel and Mary Victoria Farriel, owners of the eastern five acres acquired by purchase from Simpson H. Sharp, Sr.
*343 We confine all further discussion to disposing of the question of ownership of the center 10 acres of subject tract.
Plaintiff establishes its title upon the basis of the above mentioned deeds which appear of record herein, together with the judgments rendered in the Successions of Simpson H. Sharp, Sr. and his said spouse. Plaintiff did not offer in evidence the several partition suits mentioned in its deeds. Plaintiff did offer the parol testimony of Wiley Sharp, Jr., one of plaintiff's vendors and also the grandson of Simpson H. Sharp, Sr., to establish that the property in question belonged to the estate of the witness' grandparents and that the various vendors of plaintiff intended to include said property in their conveyances to plaintiff. More precisely, Mr. Sharp testified that he believed the property in question constituted part of the Ouida Alexis tract which the judgments of possession in the Sharp Successions described as "80.30 acres in Sec. 7, T. 9 S., R. 6 E., known as Ouida Alexis Tract." It will be readily noted that the judgment descriptions refer to property located in Section 7, whereas, it is conceded subject tract is located in Section 6, T. 9 S., R. 6 E. Additionally, plaintiff introduced the parol testimony of Mrs. Yvonne Easterly, Deputy Clerk of Court, Livingston Parish, who testified in essence that a check of parish records revealed that subject tract was part of an 80.30 acre parcel known as the Ouida Alexis tract which was assessed to and taxes paid thereon by Simpson H. Sharp, Sr., from 1939 until 1944, when Sharp sold 5 acres therefrom to defendants and that subsequently the remaining 15 acres were assessed to Sharp until his death, and thereafter to Sharp's heirs until 1969. Plaintiff concedes that the judgments of possession rendered in the Sharp successions do not describe either a 15 or 20 acre plot in Section 6, T. 9 S., R. 6 E.
To prevail in a petitory action, plaintiff must rely on the strength of his own title, not the weakness of that of his adversary. Cupples v. Harris, 202 La. 336, 11 So.2d 609.
For plaintiff in a petitory action to make out his title, he must allege a state of facts showing that he has title. Glenn v. West, 151 La. 522, 92 So. 43.
In a petitory action, the description in a deed must be such that the property intended to be conveyed can be located and identified. As a general rule, the description must fully appear within the four corners of the instrument itself, or the deed should refer to some map, plat or deed as a part of the description so that the identity of the property conveyed is definite and certain. Baldwin v. Arkansas-Louisiana Pipe Line Company, 185 La. 1051, 171 So. 442; Cupples v. Harris, above.
Where, in a petitory action, a deed is partially defective, misleading or erroneous as to description, it is nevertheless susceptible of conveying provided the property intended to be transferred can be ascertained with certainty with the aid of such extrinsic evidence as is admissible under the rules of evidence. Snelling v. Adair, 196 La. 624, 199 So. 782; Harrill v. Pitts, 194 La. 123, 193 So. 562.
It appears settled beyond doubt that a deed containing only an "omnibus description" such as those found in plaintiff's title, is void as to third persons purchasing from the same vendor on the faith of the public records. Daigle v. Calcasieu Nat. Bank in Lake Charles, 200 La. 1006, 9 So. 2d 394. The rationale of the rule is that such a vague description does not constitute notice to third persons.
Our courts have repeatedly held that a plaintiff who institutes a petitory action against one who claims not by title, but by possession only, need not adduce evidence disclosing a perfect title, but must exhibit some color of title. Doles v. Cockrell, 10 La.Ann. 540; Kernan v. Baham, 45 La. Ann. 799, 13 So. 155; Slattery v. Heilperin & Leonard, 110 La. 86, 34 So. 139; Mower *344 v. Barrow, 16 La.App. 227, 133 So. 782; Griggs v. Martin, La.App., 170 So. 355.
In Baldwin v. Arkansas-Louisiana Pipe Line Co., 185 La. 1051, 171 So. 442, plaintiff, claiming under an omnibus description deed, brought a petitory action against a lessee whose lessor held recorded title by mesne conveyance specifically describing the property involved. The court in Baldwin, above, deemed the issue to be as follows:
"The question as to what effect these deeds may have had between the parties to them is not before us. The question is whether the chain of title set up by plaintiff is sufficient to form the basis of their action against Gloyd, a third party in possession of the lands."
The court proceeded in Baldwin, above, to answer its own query in this language:
"A deed which fails to describe by legal subdivisions the real estate intended to be sold and makes no reference to any deed, map, plat, patent, survey, or boundary by which the description may be ascertained is void as to third parties for want of description of the thing sold. It is not translative of any specific property and could not form the basis of prescription."
We find that Williams v. Bowie Lumber Company, 214 La. 750, 38 So.2d 729, dispels the dicta in Baldwin v. Arkansas-Louisiana Pipe Line Co., above, and Cupples v. Harris, 202 La. 336, 11 So.2d 609, to the effect that an omnibus description conveys nothing whatsoever. Williams v. Bowie Lumber Company, above, makes it quite clear that as between vendor and vendee, an omnibus description conveys the property intended to be sold as effectively as though the property were specifically described. Williams v. Bowie Lumber Company, above, also makes it clear that as to third parties, an omnibus description does not constitute notice.
Our law is well settled to the effect that in a petitory action, plaintiff bears the burden of establishing an apparently valid title in himself before defendant's title is placed at issue. Curry v. Henry, La.App., 29 So.2d 808.
Equally well established is the rule that parol evidence to establish the identity of property is admissible in aid of a defective, erroneous or misleading description, but only where there is sufficient body in the description to base title substantially on writing and not principally on parol evidence. The rule in this regard is stated in Lemoine v. Lacour, 213 La. 109, 34 So.2d 392, as follows:
"The writings which defendants present as establishing their titles are not only insufficient per se for that purpose, but they are so defective as not to serve as a basis upon which a title could be built up or eked out by parol. The declaration that the promissory note was given `as the price of certain lands in the Parish of St. Tammany' is entirely too general to justify the admission of parol evidence to establish possession of particular property by the party named in the instrument as vendee, and from such possession to assume or infer it to be that referred to in the writing. Parol evidence to establish identity is allowable, as is likewise parol evidence of possession in aid of a defective or ambiguous description; but this is only in cases where there is sufficient body in the description to leave the title substantially resting on writing and not essentially on parol as it would have to rest, if at all, in the case at bar." (Emphasis by the Court.)
Lemoine v. LaCour, above, and its quoted authorities in effect follow Snelling v. Adair, 196 La. 624, 199 So. 782, which holds that where a portion of the description in a deed is erroneous or misleading, it is nevertheless susceptible of conveying, if the property intended to be conveyed can be ascertained with certainty by the aid of such extrinsic evidence as is admissible under the rules of evidence.
*345 We are of the view that to admit parol evidence in aid of plaintiff's deed would in effect, rest plaintiff's title on parol rather than writing. The deeds in question do not contain a defective or erroneous descriptionthey contain no description at all. Assuming the partition suits referred to in the deeds in question were admissible in aid of plaintiff's cause, it would avail plaintiff nothing because said instruments are not of record herein. The judgments of possession relied upon by plaintiff do not describe either a 15 or 20 acre tract situated in the SW ¼ of the NE ¼ of Section 6, T. 9 S., R. 6 E. We find, therefore, that plaintiff has failed to establish color of title to the middle ten acres of subject tract and dismiss plaintiff's action as of nonsuit.
It would appear on authority of Williams v. Bowie Lumber Company, above, plaintiff's remedy lies in an action to reform its deeds to describe the property intended to be conveyed thereby.
We now consider defendants' claim of ownership of the middle ten acres of subject tract by virtue of thirty years adverse possession.
Defendant Joseph J. Farriel testified he lived on the western five acres with his parents since 1935, at which time he was a young lad. He stated that his parents raised a garden near the house, principally on the west side of the residence and to the rear or south thereof. He also stated that the family kept horses, cows, hogs and chickens on the premises, and that the cattle ranged over the entire 20 acre plot. Farriel also stated that his father before him and he himself cleared two or three acres to the east of the residence and devoted the area to growing strawberries. He also testified that he conducted some timber cutting operations on the entire eastern 15 acres in about 1963 or 1964, and again in 1969. Farriel further testified that the western five acre tract was fenced on its western boundary, but not on its eastern boundary, and that to the east, he and his family used whatever they needed for their purposes. He conceded that in 1969, he constructed a single strand fence around the entire 20 acres. In 1964 and 1965, Farriel stopped one George Ashton from cutting timber on the easterly 15 acres pursuant to an agreement between Ashton and the Sharp interests.
George Ashton in essence verified defendant's testimony concerning the Farriels' possession of the western 5 acres. He also testified that in 1964 or 1965, while cutting timber on the 20 acre tract for the Sharps, whom he believed to be owners of the property, he was stopped by defendant.
Guy Forbes, defendants' neighbor, also attested to defendants' continuous possession of the western 5 acres and further stated that the Farriels kept some cows on the premises. He was aware of timber operations on the entire 20 acres from time to time, but did not know by whom these operations were conducted.
Wiley Sharp, Jr. testified in essence that he had charge of the Sharp interests following the death of his grandparents and his father, commencing about 1956. He also stated that the Sharps had Lloyd Wild cut the timber on the eastern 15 acres in about 1956 or 1957. He further testified that in the fall of 1965, after the advent of Hurricane Betsy, the Sharps cleared the fallen timber on the entire eastern 15 acres. Sharp acknowledged that in the past (when there was open range in the Parish) cattle roamed the property at will. He denied that any portion of the eastern 15 acres was ever fenced until approximately one year prior to the institution of suit at which time he observed that Farriel had erected a single strand fence along the entire road frontage (northern boundary of the 20 acre plot).
Clarence Gregoire, who resides across the road from defendants' residence, confirmed defendants' undisturbed and undisputed possession of the western 5 acres. He denied, however, that the Farriels *346 raised horses or cows on the premises in any significant number. His testimony is to the effect that the Farriels kept one or two milk cows on the premises. Gregoire stated he was always of the opinion that that portion of the 20 acre tract lying to the east of defendants' home belonged to the Sharps.
Ownership of immovable property may be acquired by thirty years adverse possession, with or without title, and regardless of whether the possessor be in good or bad faith. LSA-C.C. arts. 3475, 3499. Possession required to support a plea of thirty years prescription to title to immovable property means continuous, uninterrupted, public, unequivocal and exclusive possession. LSA-C.C. art. 3500; Ribas v. Bennett, 5 La. 271. Where one does not possess by color of title, enclosures are required to show evidence of hostile possession. Albert Hanson Lumber Co. v. Riggs Cypress Co., 130 La. 772, 58 So. 567. Enclosures in this regard are any separation or natural or artificial boundary giving notice to the public and fixing with certainty the limits of property intended to be possessed. Vavoline Oil Co. v. Concordia Parish School Board, La.App., 216 So. 2d 702. We find that defendants have no color of title to the center 10 acres in dispute. Neither do we find that defendants have possessed the middle 10 acres in such manner as to give open public notice and fixing with certainty the limits of the property intended to be possessed. As to actual enclosures, it is shown that defendants did not fence the property until one year prior to plaintiff filing suit.
Defendants' use of this portion of the tract has been minimal and sporadic. Moreover, it has not been either exclusive or uninterrupted inasmuch as the Sharps have, within the last thirty years exercised acts of ownership over the center 10 acres by conducting timber operations thereon at least twice.
It is ordered, adjudged and decreed that the judgment of the trial court is hereby affirmed insofar as it recognizes and declares defendants, Joseph J. Farriel and Mary Victoria Farriel, as lawful owners of the following described property:
That certain tract of land, together with all of the buildings and improvements thereon, located in the southwest quarter of the northeast quarter of Section 6, Township 9 South, Range 6 East, in Livingston Parish, Louisiana, and being the easterly five acres of that tract of land of twenty acres, more or less, bounded now or formerly on the North by Louisiana Highway 22, on the East by Eugene Bovia (formerly W. E. Brown), on the South by lands now or formerly owned by Livingston Lumber Company, and on the West by lands of J. H. Jenkins Contractors, Inc. (formerly S. H. Sharp Estate).
It is further ordered, adjudged and decreed that the judgment of the trial court is affirmed insofar as it recognizes and declares defendant, Joseph J. Farriel, lawful owner of the following described property, to wit:
That certain tract of land, together with all of the buildings and improvements thereon, located in the southwest quarter of the northeast quarter of Section 6, Township 9 South, Range 6 East, in Livingston Parish, Louisiana, and being the westerly five acres of that tract of land containing approximately twenty acres, more or less, and bounded now or formerly on the North by Louisiana Highway 22; on the East by J. H. Jenkins Contractors, Inc. (formerly S. H. Sharp Estate); on the South by lands now or formerly of Livingston Lumber Company, and on the West by lands now or formerly of E. H. Lewis and Anthony Pinion.
It is further ordered, adjudged and decreed that the judgment of the trial court rejecting the demand of plaintiff, J. H. Jenkins Contractors, Inc., in and to the above described two parcels of land, be and the same is hereby affirmed, and plaintiff's *347 demands as to these tracts dismissed with prejudice.
It is further ordered, adjudged and decreed that the claim of defendants, Joseph J. Farriel and Mary Victoria Farriel, to the remaining or center 10 acres of subject tract, be dismissed with prejudice.
It is further ordered, adjudged and decreed that the judgment of the trial court recognizing plaintiff, J. H. Jenkins Contractors, Inc. as owner of the remaining 10 acres of the property in dispute herein, is reversed and set aside, and plaintiff's demand as to said ten acres of land dismissed as of nonsuit; all costs of these proceedings to be paid by plaintiff, J. H. Jenkins Contractors, Inc.
Affirmed in part, reversed in part, and rendered.