Lester J. BERGERON, et al.,
Plaintiffs-Appellants
Cross-Appellees,

v.

AMOCO PRODUCTION COMPANY, et
al., Defendants-Appellees
Cross-Appellants.

No. 85–3003.

United States Court of Appeals,
Fifth Circuit.

May 14, 1986.

Charles C. St. Dizier, Strain, Dennis, Palmer, Mayhall & Bates, William S. Strain, Baton Rouge, La., Jewell & Jewell, John Wayne Jewell, New Roads, La., for plaintiffs-appellants cross-appellees.

J. Clayton Johnson, Tom F. Phillips, Baton Rouge, La., for defendants-appellees cross-appellants.

Before GARZA, POLITZ and HILL, Circuit Judges.

POLITZ, Circuit Judge:

In this Louisiana diversity jurisdiction suit we must determine the appropriate construction to be given oil, gas, and mineral (OGM) leases as they affect an undivided fractional interest in a 40-acre tract of land within the gas-rich Tuscaloosa Trend in Pointe Coupee Parish, Louisiana. Concluding that the district court correctly plumbed Louisiana law, we affirm.

### FACTUAL BACKGROUND

In September of 1976 James Mixon, a lease broker employed by Thomas Durham, contacted Lester J. Bergeron and made known Durham's interest in securing OGM leases on property owned by the Bergeron family in Pointe Coupee Parish. Lester Bergeron's father, Horace J. Bergeron, had died in 1954, survived by two sons, Lester J. and Bennett A. Bergeron, and their mother, Caroline Mix Bergeron. The Bergerons owned six contiguous tracts which

they agreed to lease to Durham. This was done by the execution of four instruments: (1) a lease by Caroline Mix Bergeron covering the challenged 40 acres; (2) a joint lease by the Bergeron brothers covering three tracts totalling 250 acres which they owned in indivision; and (3) a lease by each of the brothers covering separate 80-acre tracts.

The joint lease covered, *inter alia,* land in section 51 and 123 in Township 4 South, Range 10 East, Point Coupee Parish, Louisiana, as did the individual lease by Lester Bergeron. The 40 acres leased by Caroline Mix Bergeron is also located in sections 51 and 123, T4S, R10E. Durham assigned the leases to Amoco Production Company and Gulf Oil Corporation.

Caroline Mix Bergeron died on October 27, 1976 and her succession was accepted unconditionally by her two sons in proceedings filed the following May. They were sent into possession of their mother's property, including her interest in the 40-acre tract.

Subsequent to their mother's death the Bergeron brothers learned that she owned only a 513/2880ths interest in the 40 acres, and, by virtue of inheritance from their father that they jointly owned the remaining 2367/2880th interest. For several years, royalties were paid consistent with the leasing of the entirety of the Bergeron interest in all of their contiguous acreage in Pointe Coupee Parish. They then filed an action under 28 U.S.C. § 2201 seeking a judgment declaring that their 2367/2880th interest in the 40 acres was not covered by the lease executed by their mother. Amoco and Gulf answered and counterclaimed for a judgment declaring that in executing the joint lease, Lester J. and Bennett A. Bergeron leased their interest in the adjacent 40 acres.

Upon conclusion of the bench trial, the district court held that in executing the lease on the 40 acres Caroline Mix Bergeron did not encumber the interest owned by her sons therein and that their acceptance of her succession did not change that legal reality. Continuing in its analysis, the trial court found that the clause commonly referred to as a "coverall clause" found in the leases subjected the 2367/2880ths interest in the 40 acres to the provision of the joint lease which extended to all tracts in sections 51 and 123 T4S, R10E. Proceeding further, finding clear and convincing proof that all parties fully intended to lease all interest in the acreage owned by the Bergerons in the six contiguous tracts, the court found mutual error and ordered the joint lease reformed. We affirm in each respect.

## THE 40 ACRES

There need be little discussion about the contentions of Amoco and Gulf that the lease executed by Caroline Mix Bergeron covered interests not owned by her but which belonged, instead, to her two sons via inheritance from their father. We adopt as our own the findings, discussion, and conclusions of the district court on this issue, reported at 602 F.Supp. 551, 553–55 (M.D.La.1984).

## THE COVERALL CLAUSE

■ Each of the leases contained this clause:

> All land owned by the Lessor in the above-mentioned Section or Sections or Surveys, ... are included herein, whether properly or specifically described or not.... [T]his lease, without further evidence thereof, shall immediately attach to and affect any and all rights, titles, and interests in the above described land, including reversionary mineral rights, hereafter acquired by or inuring to Lessor and Lessor's successors and assigns.

As noted, the 40-acre tract is located in sections 51 and 123, T4S, R10E, Pointe Coupee Parish, Louisiana. The joint lease specifically describes and covers acreage in these two sections, as does Lester Bergeron's separate 80-acre lease.

The district court found that the coverall clause was valid under Louisiana law and, as a consequence, the clause extended the

joint lease to the brothers' interest in the 40 acres. We likewise so conclude.

Neither party invites our attention to dispositive Louisiana jurisprudence or statute; independent research discloses none. The only OGM case found involving the coverall clause is *Melancon v. Melancon*, 199 So.2d 573 (La.App.1967) in which an intermediate appellate court implicitly approved the coverall clause, finding that it was "inserted for the protection of the lessee should lessor own additional property adjacent to the property described in the lease." *Id.* at 576.

Although the Supreme Court of Louisiana has never addressed a coverall clause in an OGM lease, we find approval of the "coverall" concept in a decision predating *Melancon* by two decades. In *Williams v. Bowie Lumber Co.*, 214 La. 750, 38 So.2d 729 (1948), Louisiana's highest court held that the language "all of the property owned by [vendor] in the Parish of Lafourche" excepting certain defined tracts, was sufficient, as between the parties, to convey property therein owned by the vendor which was not specifically described in the various deeds. Applying Louisiana Civil Code provisions, the court declared that "as between the parties to the contract and their privies, a sale of real property by an omnibus designation is just as effective and binding as though the lands were specifically described." 38 So.2d at 730.

Citing *Williams*, in cases which did not involve the rights of third persons, Louisiana's courts of appeal unanimously have held that omnibus designations are as effective as between the parties and their privies as precise and certain descriptions. *See, e.g., Major v. Morgan*, 408 So.2d 923 (La.App.1981); *Valvoline Oil Co. v. Krauss*, 335 So.2d 64 (La.App.1976); *J.H. Jenkins Contractors, Inc. v. Farriel*, 246 So.2d 340 (La.App.1971), *aff'd*, 261 La. 374, 259 So.2d 882 (1972); *Cattle Farms, Inc. v. Abercrombie*, 211 So.2d 354 (La.App.1968); *Harper v. Celotex Corp.*, 183 So.2d 350 (La.App.), *cert. denied*, 249 La. 123, 185 So.2d 530 (La.1966); *O'Meara v. Brous-*

*sard*, 162 So.2d 777 (La.App.), *cert. denied*, 246 La. 373, 164 So.2d 360 (La.1964).

Based on this consistent enforcement of omnibus descriptions in cases not involving the rights of third persons, and the inferential approval of the *Williams* holding in an OGM setting in *Melancon*, we are persuaded that the district court correctly predicted Louisiana law.

Finally, the district court found clear and convincing proof that the parties intended to lease the entirety of the Bergeron acreage in Pointe Coupee Parish. The testimony of both Bergerons reflects that intent as does the testimony of James Mixon on behalf of his employer, the lessee. In light of the mutuality of error in failing to execute an instrument evidencing that intent, under Louisiana law either party may reform the contract. As the Louisiana Supreme Court held in *Weber v. H.G. Hill Stores Co.*, 210 La. 977, 29 So.2d 33, 38 (1946), "when the contract written to carry out the mutual understanding and agreement of the parties is contrary to, and not in accordance with, their understanding, and this error is mutual ... the contract may be reformed to express that understanding." This rule has application where the mistake is an omission of property from a deed or lease. *Burt v. Valois*, 144 So.2d 196 (La.App.1962).

We harbor no doubt whatever that had Lester and Bennett Bergeron been aware of their fractional undivided interest in the 40-acre tract they would have included that property in the joint lease which contained all of their other undivided interests, including tracts on either side of the 40 acres. That lease should be reformed to specifically include the 40-acre tract, thus reflecting the "true contract between the parties." *Ober v. Williams*, 213 La. 568, 35 So.2d 219, 224 (1948).

For these reasons the judgment of the district court is AFFIRMED.